UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 CR 646-1 |
| ) | |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| ROBERT SPEED, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Robert Speed moves to exclude testimony by Julia Hochstadt, the Government's proposed expert witness on the dynamics of domestic violence.

### BACKGROUND

The Court assumes familiarity with the facts and posture of this case. For brief context, the superseding indictment (the "Indictment") charges Defendant Robert Speed and Shirley Speed with kidnapping Victim A, in violation of 18 U.S.C. § 1201(a) (Count 1); interstate domestic violence against Victim A, in violation of 18 U.S.C. § 2261(a)(1) and (b)(3) (Count 4); and interstate domestic violence against Victim A, in violation of 18 U.S.C. § 2261(a)(2) and (b)(3) (Count 5). (ECF No. 117.) Shirley Speed pled guilty on June 27, 2023. (ECF No. 192.) Defendant Robert Speed was further charged with interstate domestic violence against Victim A, in violation of 18 U.S.C. § 2261(a)(1) and (b)(3) (Count 2); interstate domestic violence against Victim A, in violation of 18 U.S.C. § 2261(a)(2) and (b)(3) (Count 3); kidnapping Victim B, in violation of 18 U.S.C. § 1201(a) (Count 6); and three counts of interstate domestic violence against Victim B, in violation of 18 U.S.C. § 2261(a)(2) (Counts 7-9). (ECF No. 117.)

At trial, the government anticipates calling alleged Victim A and Victim B to testify

1

about how they met defendant Robert Speed, the evolution of their respective relationships as dating partners, and the cycle of violence they both experienced. Generally, these alleged victims are expected to testify that Robert Speed's behavior would alternate between charming and violent and that they each left Robert Speed due to the physical abuse they experienced at his hands, but nevertheless returned to him, and that they did not always report the abuse to law enforcement.

The Government offers Ms. Hochstadt's testimony to explain the dynamics of domestic violence. (ECF No. 195-2.) On October 11, 2022, Shirley Speed filed her First Motion *in Limine* to Exclude The Government's Domestic Violence Expert. (ECF No. 152.) Defendant Robert Speed moved to adopt Shirley Speed's motion. (ECF No. 153.) Shirley Speed shortly thereafter filed her First Amended Motion *in Limine* to Exclude the Government's Domestic Violence Expert. (ECF No. 155.) On May 12, 2023, Defendant Robert Speed moved to adopt the amended motion (ECF No. 182), which the Court granted (ECF No. 187).

Defendant Robert Speed and the Government appeared for an initial pre-trial conference on November 16, 2023, at which time the Court continued to take that motion under advisement. On November 23, 2023, Defendant Robert Speed filed a Motion to Bar/Strike the Opinion Testimony of the Government's Domestic Violence Expert Julia Hochstadt. (ECF No. 213.) Pursuant to Judge Alonso's case procedures, all motions *in limine* must be filed three weeks before the final pre-trial conference. In this case, Defendant filed his motion only one week before the final pre-trial conference scheduled for November 30, 2023. The Government has not filed a response to the most recent motion. In any event, Defendant's November 23 motion essentially makes the same challenges to Ms. Hochstadt's testimony as the prior motion *in limine* that Defendant adopted, with the addition of a transcript of Ms. Hochstadt's prior testimony in an

2

unidentified state court criminal proceeding that the Government disclosed to Defendant for the first time on November 17, 2023. Defendant argues that he was compelled to file the most recent motion *in limine* to supplement the earlier arguments made by Shirley Speed.

Defendant moves to exclude Ms. Hochstadt's testimony, arguing that it is not based on reliable methodology, it is not helpful to the jury, and it is more prejudicial than probative. Defendant also argues that the Government did not provide adequate notice in accordance with Federal Rule of Criminal Procedure 16. In the event the Court determines that the record is insufficiently developed to rule on the briefing, Defendant requests a *Daubert* hearing.

The Court is satisfied that the record is sufficiently developed and that it has considered sufficient briefing to rule on the motions without a *Daubert* hearing. For the reasons set forth below, Defendant's motions to exclude Ms. Hochstadt's testimony are denied.

## LEGAL STANDARD

"The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles outlined in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)]." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). Rule 702 requires that the district judge act as a "gate-keeper who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (quoting *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006) (cleaned up)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *Daubert*, 509 U.S. at 589. Federal Rule of Evidence 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

  (c) the testimony is the product of reliable principles and methods; and
  (d) the expert has reliably applied the principles and methods to the facts of the case.

The rule imposes "three basic prerequisites." 4 *Weinstein's Federal Evidence* § 702.02[3]. "Under Federal Rule of Evidence 702 and *Daubert,* the district court must . . . determine [1] whether the witness is qualified; [2] whether the expert's methodology is . . . reliable; and [3] whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007)).

The advisory committee notes to Rule 702 contemplate the use of experts to educate the jury on general principles, as the Government proposes to do here:

> If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably. Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendments).

The proponent of the expert bears the burden of demonstrating, by a preponderance of the evidence, that "the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments). District judges possess considerable discretion in dealing with expert testimony. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990);

4

*see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 (1997) (holding that abuse of discretion standard applies in reviewing district court rulings on admissibility of Rule 702 opinion testimony).

## DISCUSSION

The Government intends to call Ms. Hochstadt to explain domestic violence, the different types of abusive behavior and examples of each, the cycle of violence, the reasons victims sometimes do not leave abusive relationships, or if they do, why they often return, and disclosure/reporting by victims to friends/family, and law enforcement. (ECF No. 195 at 3.) Ms. Hochstadt has no knowledge about the facts of this case so she will not give any specific opinions as to the Defendant, his actions with alleged Victims A and B, or the credibility of alleged Victims A and B. (*Id*. at 3-4.) Rather, the Government contends that this testimony will allow the jury to assess on its own the testimony of alleged Victims A and B, including their description of how they met Robert Speed, how their relationships began/evolved, how they involved a cycle of violence, how they were abused, how they nevertheless returned to him, and how they may not have always disclosed the abuse.

The Court first considers whether Ms. Hochstadt is qualified to testify in this regard. "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005).

As set forth in her CV, Ms. Hochstadt has a bachelor's degree in psychology from the University of Delaware and a master's degree in social work from Columbia University. (ECF No. 195 Ex. 1.) She has a certification for applied psychodynamic psychotherapy from the

5

Institute for Contemporary Psychotherapy. (*Id*.) She is a licensed psychotherapist specializing in crisis intervention and trauma treatment since 2010. (*Id*.)

Ms. Hochstadt has worked with thousands of victims of domestic violence or intimate partner violence ("IPV") for over a decade, including at the Victim Intervention Program at New York-Presbyterian Weill-Cornell Medical Center between 2013 and 2018, as a clinician/manager for the Sexual Assault Forensic Examiner program in New York between 2007 and 2011, and at the Camba & Brooklyn Family Justice Center and the Sanctuary for Families in New York from 2005 to 2007. (*Id*.) She has spent years providing individual and group psychotherapy to survivors of IPV, rape, sexual assault, and childhood sexual abuse. (*Id*.) She was also the in-house crime victim expert specializing in IPV and sexual assault and developed continuing education curriculum and educated hospital and community professionals regarding IPV. (*Id*.) Ms. Hochstadt has served as a consultant for and expert witness regarding IPV and sexual violence for the Manhattan, Bronx, and Rockland District Attorney's Offices since 2014. (*Id*.) She has testified as an expert in two state criminal proceedings in the last four years and prepared for four other trials, including one for which she was retained as a defense expert. (ECF No. 195 Ex. 2.) Based on her knowledge, experience, training, and education, Ms. Hochstadt is plainly qualified to testify as to the dynamics of domestic violence or IPV.

The Court next considers whether Ms. Hochstadt's anticipated testimony will assist the jury and fits the facts of this case. Ms. Hochstadt's testimony is offered to explain the types of behaviors survivors of IPV often exhibit and that are not intuitive to laypersons, such as why they do not always leave abusive relationships, why they often return, and why they do not always immediately report the violence. This testimony is plainly relevant to the anticipated testimony of alleged Victims A and B, will be helpful to the jury in determining whether alleged

6

Victims A and B were held against their will by Defendant, and fits within the facts of this case. *See United States v. Dingwall*, 6 F.4th 744, 754 (7th Cir. 2021) ("Expert evidence of battering and its effects can help to explain to a jury, likely unfamiliar with the topic, how victims of battering may respond to their circumstances."); *United States v. Young*, 316 F.3d 649, 658 (7th Cir. 2002) (finding expert testimony on how victims typically respond to domestic violence would assist the jury in determining how to credit victim's recantation of testimony at trial); *United States v. Smith*, 142 F.3d 438 (6th Cir. 1998) (Table) (admitting psychologist's testimony that "she was familiar with reactions of women who have been victims of rape or sexual assault and that women often do not report the incidents immediately" to rebut defendant's assertion that alleged victims "were unreliable because they did not immediately report their rapes and assaults").

Defendant nonetheless argues that Ms. Hochstadt's testimony will not aid the jury because the concepts and issues related to domestic violence are obvious to the average lay person in contemporary society. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) ("[A]n expert ... must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." (citation omitted)). The cases cited by Defendant are not persuasive because the testimony offered by the experts in those cases was distinguishable from the testimony at issue here. *See In Cooper v. City of Chi. Heights*, No. 09 C 3452, 2011 U.S. Dist. LEXIS 56926, *13 (finding expert's opinion that "women are more likely to be victims of domestic violence than men . . . is common knowledge and the jury does not need the assistance of an expert"); *United States v. Burke*, Case No. 19-CR-322, slip op.

7

(N.D. Ill. Nov. 20, 2023) (expert offered opinion on memory) (attached to Defendant's motion as Exhibit 4); *United States v. Libby*, 461 F. Supp. 2d 3, 12 (D.D.C. 2006) (same).

Defendant argues that Ms. Hochstadt fails to connect her generalized opinions with any witness in the case. But that does not render Ms. Hochstadt's testimony unhelpful or otherwise inadmissible under Rule 702. *See, e.g.*, *Dingwall*, 6 F.4th at 753 (explaining the types of cases where general expert evidence of battering and its effects has been admitted, including kidnapping and interstate domestic violence, human trafficking, and sexual abuse of minors); *United States v. Vasquez*, 729 F. App'x 383, 385 (6th Cir. 2018) (finding expert testimony of social worker and director of domestic violence program regarding general characteristics and behaviors of typical victims of domestic violence to assist the jury in determining consent); *United States v. Johnson*, 860 F.3d 1133, 1140 (8th Cir. 2017) (General "expert testimony about how individuals generally react to sexual abuse—such as not reporting the abuse and not attempting to escape from the abuser—helps jurors evaluate the alleged victim's behavior."); *United States v. Hadley*, 918 F.2d 848, 852 (9th Cir. 1990) (finding expert testimony about "about general behavior characteristics that may be exhibited in children who have been sexually abused" to be helpful to the trier of fact).

Defendant argues that Ms. Hochstadt's testimony is more prejudicial than probative, Fed. R. Civ. P. 403, specifically taking issue with the use of the terms "abusers" and "victims." But the term "victim" is used in the statutes under which Defendant is charged. *See* 18 U.S.C. § 2261; 18 U.S.C. § 1201. Further, Ms. Hochstadt does not draw any conclusions that Defendant is an "abuser" or that the alleged Victims A and B are his "victims." The jury remains free to evaluate the weight of Ms. Hochstadt's opinions and the credibility of the alleged victims' testimony. *United States v. Jackson*, No. 3:20-CR-76 DRL-MGG, 2021 WL 1570613 (N.D. Ind.

8

Apr. 22, 2021) ("The proposed testimony will explain concepts and dynamics to place the alleged victim's testimony in context—to understand it and then to evaluate whether it proves elements of the crimes here or not."). For these reasons, as well, Ms. Hochstadt's testimony does not impermissibly testify as to witnesses' credibility and thereby invade the province of the jury. *See, e.g.*, *Vasquez*, 729 F. App'x at 386; *Johnson*, 860 F.3d at 1140-41 ("So long as the expert does not impermissibly 'vouch' for the victim by, for example, diagnosing the victim with sexual abuse or expressing an opinion that sexual abuse has in fact occurred, the testimony does not necessarily invade the jury's exclusive responsibility to determine the credibility of witnesses."). The Court cannot say that the risk of prejudice substantially outweighs the testimony's probative value.

The Court next considers the reliability of Ms. Hochstadt's opinion, which Defendant contests. The Supreme Court in *Daubert* set out several factors "that serve as a starting point for determining whether an expert's opinion is based upon reliable methodology." *Young*, 316 F.3d at 656; *see also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) ("The non-exclusive list of *Daubert* reliability factors for scientific evidence includes whether or not the theory or technique has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." (citing *Daubert*, 509 U.S. at 593-94)). But this "list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho*, 526 U.S. at 141 (internal quotation marks omitted). "Thus, the *Daubert* inquiry must be connected to the particular facts of the case." *Young*, 316 F.3d at 657 (citations omitted).

Defendant acknowledges that an expert can render opinions based on experience under Rule 702 but argues that Ms. Hochstadt fails to explain the methodologies and principles that

9

support her opinions. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data . . . . Rule 702 does require, however, that the expert explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.'" (citations omitted)). Specifically, Defendant argues that Ms. Hochstadt: (1) is not routinely and actively engaged in the pursuit of empirical research, data analysis, or data compilation concerning incidents of domestic violence; and (2) fails to cite a methodology she actually used and applied in this case as to Defendant or alleged Victims A and B.

      The Court is persuaded that courts "have consistently allowed expert witnesses to testify concerning domestic violence even in circumstances where the research is not supported by exhaustive statistical evidence[,]" provided the expert evidence is "is based 'on a reliable foundation.'" *United States v. LaVictor*, 848 F.3d 428, 443-44 (6th Cir. 2017) (citation omitted) (finding domestic violence expert testimony that "was based on insight gleaned from [the expert's] personal experience interviewing victims of domestic abuse" to be sufficiently reliable); *see also United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (licensed psychologist's testimony regarding indicia of rape-victim behavior was sufficiently reliable based on expert's professional experience, education, training, and observations); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 745 (7th Cir. 2003) (expert's citing rape research to explain victim's "failure to immediately notify the police that she had been raped" and her "inability to recall the details of the crime clearly" could "be consistent with that of a person who was raped"); *United States v. Alzanki*, 54 F.3d 994, 1006 (1st Cir. 1995) (upholding, as reliable under *Daubert*, testimony on the behavioral reactions of abuse victims based on expert's general

research and personal interaction with hundreds of abuse victims), *cert. denied*, 516 U.S. 1111 (1996).

Here, Ms. Hochstadt bases her opinions on her extensive experience, summarized above, working with and for victims of domestic violence, which the Court finds to be a sufficiently reliable foundation. *See Young,* 316 F.3d at 657 ("Among the factors to consider, the expert witness's experience in a particular field is often quite relevant in determining the reliability of her opinion."); *Johnson*, 860 F.3d at 1139 (finding expert testimony about the dynamics of abusive relationships based on expert's thirty years of experience as a licensed social worker specializing in domestic violence and sexual assault rested on a "reliable foundation").

Any misgivings the jury may have after hearing Ms. Hochstadt's testimony can be addressed on cross-examination at trial and through jury instructions. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013) (Assuming there is "a rational connection between the data and the opinion," the "expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility." (citing *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000)); *LaVictor*, 848 F.3d at 444; *Jackson*, 535 F.Supp.3d at 818.

The Court denies Defendant's alternative request to conduct a *Daubert* hearing. A district court need not conduct a *Daubert* hearing "'where the reliability of an expert's methods is properly taken for granted.'" *United States v. Tingle,* 880 F.3d 850, 854 (7th Cir.) (quoting *Kumho,* 526 U.S. at 152). The Court is satisfied that the record and case law sufficiently support the conclusion that Ms. Hochstadt should not be barred from testifying in this case. *See Johnson*, 860 F.3d at 1140 (district court did not err in admitting testimony of domestic violence expert without a *Daubert* hearing).

11

Finally, the Court finds that the Government's notice and June 30, 2023 supplemental notice to Defendant adequately state Ms. Hochstadt's opinions, their bases, and her qualifications. Fed. R. Crim. P. 16(a)(1)(G); *United States v. Duvall*, 272 F.3d 825, 828, 828 n.1 (7th Cir. 2001).

## CONCLUSION

For the reasons set forth above, Defendant's adopted motion to exclude Julia Hochstadt's testimony [155], and recent motion requesting the same relief [213], are denied.

**SO ORDERED.**                                     **ENTERED: November 30, 2023**

                                                                             _____
                                                                             **HON. JORGE ALONSO**
                                                                             **United States District Judge**